```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **PACTIV CORP.,** | |
| Plaintiff, | Case No. 10 C 461 |
| v. | |
| **MULTISORB TECHNOLOGIES, INC.,** | Hon. Harry D. Leinenweber |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Multisorb Technologies Inc.'s ("Multisorb") Motion for Partial Summary Judgment on Count VI of Plaintiff Pactiv Corp.'s ("Pactiv") First Amended Complaint, which alleges a breach of contract. For the reasons that follow, the motion is held in abeyance, and Pactiv is given 45 days to conduct additional discovery.

### I. BACKGROUND

Pactiv and Multisorb are competitors in the field of modified atmosphere packaging for raw meat who are embroiled in a patent lawsuit in which each accuses the other of infringing upon its patents. The technology at issue preserves red meat by using an oxygen absorber to removal residual oxygen from the packaging. The Court has stayed all of Pactiv's patent claims pending re-examination. The Court has supplemental jurisdiction over Pactiv's breach of contract claim pursuant to 28 U.S.C. § 1367.

The breach of contract claim stems from the parties' former business relationship. On September 5, 1995, Pactiv's predecessor, Mobil Chemical Co., and Multisorb's predecessor, Multiform Desiccant, Inc., entered into a Mutual Confidentiality Agreement in order to explore the possibility of a business relationship. The companies then began working together, and on July 1, 1997, entered into a Supply Agreement.

Pactiv, in Count VI of its Amended Complaint, accuses Multisorb of using confidential information in violation of those agreements in order to develop its FreshPax oxygen absorber. In relevant part, the Mutual Confidentiality Agreement provided that:

> Confidential Information received by the Recipient from the Disclosing Party shall not be disclosed to any third party or, except with respect to the Project or other activities between the Parties, be used (including without limitation, by analyzing samples, directly or indirectly, for chemical composition) or reproduced by the Recipient, without the prior written consent of the Disclosing Party.

The agreement defined confidential information as follows:

> "Confidential information" includes, but is not limited to, any and all technical and business information, which either party makes available in writing to the other, which is labeled as "Confidential," "Proprietary," "Secret," or the like, regarding certain machinery, operations, processes, techniques, formulas, strategies, technologies, samples, business and manufacturing methods owned by either of them. If the Confidential Information, in the first instance, is disclosed orally or by other non-written means by one party to the other, it must promptly be

> confirmed in writing by the party making such disclosure and be labeled as "Confidential," "Proprietary," "Secret," or the like. In addition, Confidential Information includes the terms and conditions of this agreement.

Pactiv contends that Multisorb violated both this agreement and the Supply Agreement, which provides, in relevant part:

> During the Term, the Parties anticipate that they may disclose to each other certain confidential and/or proprietary information. The Parties' treatment of such information shall be governed by the terms of the Mutual Confidentiality Agreement between them.

Multisorb initially moved for summary judgment on the ground that Pactiv could not show that it provided Multisorb with any documents labeled "confidential" under the terms of the Mutual Confidentiality Agreement. Pactiv responded by producing documents that had been designated "confidential," but Multisorb asserts that these documents are insufficient to create a genuine issue of material fact as to whether Pactiv provided Multisorb with confidential information that it used to develop its FreshPax oxygen absorber.

Pactiv also argues that its employees orally provided Multisorb with confidential information, while Multisorb contends that any such disclosures would have been outside the scope of the Confidentiality Agreement. Although Multisorb's theory as to why it is entitled to summary judgment shifted, all issues have been fully briefed given that Pactiv was allowed to file a Surreply to Multisorb's Reply in support of its Motion for Summary Judgment.

## II. **LEGAL STANDARD**

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *Id*. at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

### III. ANALYSIS

As a preliminary matter, the parties agree that New York law governs this dispute. Both the Mutual Confidentiality Agreement and the Supply Agreement contain choice-of-law provisions providing that they will be governed by New York law. Typically, the parties' choice of law will be given effect unless the law chosen is contrary to Illinois public policy. *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994). Since neither party argues that applying New York law would violate Illinois' public policy, the Court shall follow the choice-of-law provision and apply New York law to the determination of this motion.

#### A. Confidential Documents

In support of its claim, Pactiv points to six documents or sets of documents that it claims were sent to Multisorb during the parties' relationship and which were designated "confidential."

The first set of documents, labeled PACTIV0000149-50, shows test results for oxygen absorbers using vinegar injections.

The second document, labeled PACTIV0000127, shows test results using water injections. Relying on an affidavit from Thomas Powers ("Powers"), Director of Research and Development at Multisorb, Multisorb argues that these documents do not disclose any composition information or information that would have enabled Multisorb to develop its oxygen absorber. Powers avers that

Multisorb's absorber does not require an injection just prior to the insertion of the absorber in the meat packaging.

The third set of documents, labeled PACTIV0004622-23, concerns test results detailing oxygen absorption rates for the MRM absorber, a Multisorb product.

The fourth set, labeled PACTIV 0013538-42, show test results for the MRM, TLC, and TRM oxygen absorbers. These are Multisorb products. According to Powers, no composition information is disclosed, nor is any information that would allow one to manufacture an oxygen absorber.

The fifth set of documents, labeled M0029905-32, and the sixth set, labeled M0029933-29937, are test results of Multisorb products. Again, Multisorb contends that these documents do not contain information that would allow one to manufacture an oxygen absorber. It argues that test results of its own products either were already known to Multisorb or could be obtained by Multisorb reverse engineering its own products. Multisorb emphasizes that the Confidentiality Agreement excluded information that was in the public domain, and that by 1998, the earliest date of the documents, general information relating to the use of oxygen scavengers to prevent discoloration of packaged meat was already in the public domain. *See* C.O. Gill & J.C. McGinnis, *The Use of Oxygen Scavengers to Prevent the Transient Discoloration of Ground*

*Beef Packaged Under Controlled, Oxygen-Depleted Atmospheres*, Meat Science, Vol. 41, No. 1, p. 19–27 (1995). (D.E. 199, Ex. 1-G).

Pactiv contends that these documents involve test data and conditions, injection amounts, and types of injection materials that fall within the categories of confidential information outlined in the Confidentiality Agreement, which includes "machinery, operations, processes, techniques, formulas, strategies, technologies, samples, business and manufacturing methods owned by either of them." It relies on an affidavit from Gary R. DelDuca ("DelDuca"), a Supervisor of Engineering for Pactiv. DelDuca stated that Pactiv provided Multisorb with information about absorber performance and conditions of testing.

First, the Court agrees with Pactiv that the Mutual Confidentiality Agreement does not limit confidential information to that which, in and of itself, would allow someone to construct an oxygen absorber. The Pactiv documents disclose information about the use of oxygen and water in absorbers under certain test conditions. This could fall within the definition of processes, techniques, formulas, strategies, or methods included in the Mutual Confidentiality Agreement.

The Court notes however, that Pactiv's claim appears to be on shaky ground. Pactiv specifically contends in its lawsuit that Multisorb created its meat packaging system by using confidential information in violation of the Supply Agreement. *See* First Am.

Compl. at ¶ 33. Pactiv has come forward with no showing as to how Multisorb allegedly used the information in these documents to create its own product, nor any theory as to how it could have done so. Although any direct evidence of misuse would most likely have to come from Multisorb, by this stage of the case Pactiv should have a coherent theory as to how Multisorb breached the Confidentiality Agreement. *See Texarkana Behavioral Assocs. v. Universal Health Servs., Inc.*, 748 F.Supp.2d 1008, 1018 (W.D. Ark. 2010); *Rainworks Ltd. v. Mill-Rose Co.*, 622 F.Supp.2d 650, 658 (N.D. Ohio 2009) ("It is Plaintiffs' burden to establish the confidential nature of the information, and to demonstrate that [Defendant] disclosed or used information which was not in its possession or in the public domain.").

Additionally, all of the allegedly confidential documents at issue are dated June 22, 2001, and earlier. The obligations in the Confidentiality Agreement terminated three years following the date on which the information was disclosed. Pactiv has submitted no proof that Multisorb used this information within three years of its disclosure.

However, the Court hesitates to grant summary judgment on this basis given that two of the sets of documents discussed above, labeled M0029905-32 and M0029933-29937, actually were produced by Multisorb on the day it filed its Reply Brief to this Motion. Pactiv points to this late disclosure, as well as its need to file

repeated motions to compel seeking information from Multisorb, as justifying its request for a continuance of discovery.

A discovery continuance is allowed under Rule 56(d), which is meant to prevent a premature grant of summary judgment and should be liberally construed. *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994). A party seeking discovery under the rule must make a good faith showing, through the filing of an affidavit, that it cannot respond to the pending summary judgment motion without additional information. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000). The non-movant must identify the material facts that it anticipates discovering. *Grundstad v. Ritt,* 166 F.3d 867, 873 (7th Cir. 1999).

Here, Pactiv has included the affidavit of one of its attorneys, Carrie A. Longstaff ("Longstaff"). In it, she cites motions to compel that Pactiv has filed and which were granted by this Court. At the time briefing on this motion concluded, Pactiv had just received and had yet to review certain technical and development documents relating to the development of oxygen absorber packets and systems to create case-ready meat. Relying on DelDuca's affidavit, Longstaff contends that Pactiv shared its confidential information with Multisorb employees who then developed Multisorb's oxygen absorber. Depositions of these employees are necessary to determine how Multisorb misused this information, she avers.

While the Court generally agrees with Multisorb's position that Pactiv should already have had within its possession all the confidential documents it provided Multisorb, it sees no harm in allowing a brief period of discovery to make sure that all relevant documents have been produced and to allow their significance may be addressed.

As such, the Court will allow Pactiv forty-five (45) days in which to conduct discovery on its claim. By that time, Pactiv should be prepared to address how the confidential documents discussed above (or any confidential documents since discovered) were used by Multisorb in breach of its contract with Pactiv.

In an effort to narrow the issues in this case, the Court finds, for the reasons explained below, that the Confidentiality Agreement does not cover documents not labeled "confidential" or oral disclosures made in the absence of a written confirmation. As such, any additional discovery on this issue must focus solely on any documents given by Pactiv to Multisorb and labeled confidential. (The parties seem to agree that there were no oral disclosures of confidential information followed by a written disclosure.) If Pactiv cannot support its claim on the basis of these documents, it cannot go forward. The Court will allow a 45-day continuance for such discovery.

**B. Documents Not Labeled Confidential and Oral Disclosures**

In arguing that Pactiv provided Multisorb with confidential information in other forms, Pactiv relies on DelDuca's affidavit. DelDuca stated that in 1995, Pactiv was developing a modified atmospheric packaging program that later became known as ActiveTech. The program, which was confidential, moved to a separate off-site location. Multisorb was brought in to test oxygen absorbers that might be used in connection with the program, DelDuca said. From the beginning, he averred, Multisorb understood that all information exchanged between the parties about the program was confidential.

DelDuca contends that throughout Pactiv's development of its ActiveTech product, Pactiv disclosed confidential information about topics including: (1) the required rate of oxygen removal given certain meat chemistry; (2) the understanding of myoglobin (an iron- and oxygen-binding protein) and its role in maintaining meat color; and (3) meat pigment and preservation of color.

At the off-site facility, according to DelDuca, Pactiv refined and improved the Multisorb dispenser machine. Drawings and schematics were given to certain Multisorb employees, and Multisorb employees toured the facility. These employees were told that what they observed at the off-site facility was confidential, according to DelDuca. DelDuca contends that confidential information also was exchanged through Power Point presentations at meetings between

the two companies in which Pactiv discussed market information and information about the long-term packaging of meat.

During meetings, according to DelDuca, Multisorb's representatives acknowledged that the information was being shared because there was a Confidentiality Agreement in place. Multisorb never insisted that Pactiv confirm these disclosures in writing, DelDuca averred. Multisorb acknowledges that it did not request any written confirmations following meetings with Pactiv. However, Multisorb's President, James Renda, stated in an affidavit that he did not recall any meetings in which Pactiv executives verbally advised him that information discussed during the meeting was confidential.

Pactiv's argument for an expansive definition of "confidential information" is based on is interpretation of the relevant contract provision as providing that confidential information includes, but is not limited to, documents labeled confidential or oral disclosures confirmed in writing. The provision at issue states, in relevant part:

> "Confidential information" ***includes, but is not limited to***, any and all technical and business information, which either party makes available in writing to the other, which is labeled as "Confidential," "Proprietary," "Secret," or the like, regarding certain machinery, operations, processes, techniques, formulas, strategies, technologies, samples, business and manufacturing methods owned by either of them. If the Confidential Information, in the first instance, is disclosed orally or by other non-written means

- 12 -

> by one party to the other, it must promptly be confirmed in writing by the party making such disclosure and be labeled as "Confidential," "Proprietary," "Secret," or the like. In addition, Confidential Information includes the terms and conditions of this agreement.

The Court reads the "includes but not is not limited to" language merely as providing for the possibility raised in the next sentence that confidential information may be orally disclosed if that disclosure is followed by a written confirmation. The Court does not interpret this language as allowing for the anything goes approach advocated by Pactiv. Under New York law, "[a]ll parts of an agreement are to be reconciled, if possible, in order to avoid inconsistency." *Nat'l Conversion Corp. v. Cedar Bldg. Corp.*, 246 N.E.2d 351, 354 (N.Y. 1969). It simply makes no sense for the parties to have agreed to limit the scope of confidential information to certain methods of disclosure if they meant to undo that limitation by a turn of phrase. Moreover, contractual language is not ambiguous merely because the parties put forth different interpretations. *Maniolos v. United States*, 741 F.Supp.2d 555, 569 (S.D.N.Y. 2010); *see Bethlehem Steel Co. v. Turner Constr. Co.,* 141 N.E.2d 590, 593 (N.Y. 1957) ("Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact."). As such, any oral disclosures not followed up with a written confirmation or

undesignated documents do not fall within the terms of the Confidentiality Agreement.

### C. Course of Conduct

Alternatively, Pactiv argues that the parties modified the terms of the written agreement through their conduct, so that oral disclosures and non-designated documents may be considered confidential information under the agreement.

Pactiv cites the DelDuca's averment that Multisorb representatives confirmed during their meetings that certain confidential information was protected by the agreement, and never requested a written confirmation letter. Pactiv further argues that this understanding is confirmed by a Distributor Agreement the parties entered into in 1997. However, this agreement was never performed by the parties, and applied to documents required to substantiate billing. It is not applicable here.

That leaves the question of whether Pactiv has presented sufficient evidence that the parties' course of conduct enlarged the scope of confidential information under the agreement. In arguing that the parties recognized it was not practical to disclose only information that had been labeled confidential or to provide follow-up letters after every conversation, Pactiv points to deposition testimony from Christopher Nigon ("Nigon"), a former President of Multisorb. Nigon testified that during the parties' working relationship, there may have arisen circumstances in which

it was not practical for something to be marked as confidential, such as if the employees from both companies were "standing over a machine, and the meat is going through, and you're trying to fill it with absorbers." Nigon Dep. at 167:13–15. Nigon added that he could not state with certainty that that scenario had occurred, but it was possible. *Id.* at 20–22.

This evidence is insufficient to raise a genuine issue of material fact as to whether the parties modified the agreement through their conduct. First, under New York law, for a contract to be modified through course of conduct, the change must be supported by new consideration. *Ballard v. Parkstone Energy, LLC*, 522 F.Supp.2d 695, 710 (S.D.N.Y. 2007) (citing *Estate of Anglin v. Estate of Kelley*, 705 N.Y.S.2d 769, 772 (N.Y. App. Div. 2000)). Pactiv presents no evidence as to additional consideration supporting a modification of the agreement.

Second, regardless of this requirement, Pactiv has presented insufficient evidence to show that the parties modified their agreement. Nigon's statements on this point are equivocal at best in that he said it was plausible that confidential information had been orally provided to Multisorb employees, but he could not recall an instance in which that occurred. Nigon Dep. at 167:19–25. The fact that Multisorb apparently did not ask for written follow-up designations is likewise insufficient to show that the parties modified the contract through their conduct. *See*

*Robotic Vision Sys., Inc. v. Gen. Scanning, Inc.*, 96 CV 3884, 1997 WL 1068696, at *6 (E.D.N.Y. Sept. 8, 1997).

Finally, Pactiv, analogizing to trade secret cases, argues that Multisorb had an obligation not to use or disclose its confidential information regardless of the terms of the Confidentiality Agreement. This argument, however, fails where the claim at issue is not for misappropriation of trade secrets, but for breach of contract. For these reasons, Pactiv has failed to demonstrate the existence of a genuine issue of material fact that the agreement was modified through the parties' conduct.

## IV. CONCLUSION

For the reasons stated herein, Multisorb's Motion for Summary Judgment on Pactiv's breach of contract claim is held in abeyance, with Pactiv given an additional forty-five (45) days to conduct discovery on this claim from the date of this Order.

**IT IS SO ORDERED.**

	Harry D. Leinenweber, Judge
	United States District Court

**DATE:** October 13, 2011