```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

PACTIV CORP.,

      Plaintiff,    Case No. 10 C 461

  v.

MULTISORB TECHNOLOGIES, INC.,    Hon. Harry D. Leinenweber

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Multisorb Technologies, Inc.'s (hereinafter, "Multisorb") Motion for Partial Summary Judgment on Count VI of Plaintiff Pactiv Corp.'s (hereinafter, "Pactiv") First Amended Complaint, a breach of contract complaint. For the reasons stated herein, the motion is granted.

### I. BACKGROUND

Because much of the scope and many of the issues of this summary judgment motion were resolved in the Court's October 13, 2011 opinion, familiarity with it is presumed. The Court will offer only a brief overview of the issues.

Both parties manufacture "oxygen scavengers," which are chemicals placed inside a "sachet" or packet, which is then placed inside a package containing food. The oxygen scavenger removes oxygen from the atmosphere of the package. The lack of oxygen keeps the food – in this case, raw meat – fresh longer.

The parties' predecessors entered into a Confidentiality Agreement on September 5, 1995 to explore the possibility of a business relationship. On July 1, 1997, they entered into an agreement whereby Multisorb supplied Pactiv with the scavenger materials for use in its ActiveTech Program, which was a system for packaging raw meat.

Plaintiff alleges Defendant breached a Confidentiality Agreement by using confidential information Plaintiff supplied to Defendant to develop a competing product and a system (the Multisorb FreshPax CR oxygen absorber and Maplox Program), and that such use breached the agreement because it was used without permission of Pactiv.

In the Court's last order, the contract was construed to cover only those documents marked "confidential" or similarly designated. The parties agree that just 43 pages fall into that category. The following chart summarizes the documents, the dates they were disclosed by Pactiv to Multisorb, the confidential information Pactiv alleges they contain, and Multisorb's contentions in regard to each.

| Bates Number | Date Pactiv Disclosed to Multisorb | Confidential information contained therein (Pactiv's contentions) | Reason the information is not confidential (Multisorb's contentions) |
|---|---|---|---|
| Pactiv 127 | 4/16/98 | Irrelevant (see analysis, *infra*) | Irrelevant (see analysis, *infra*) |
| Pactiv 149-150 | 4/15/98 | Irrelevant (see analysis, *infra*) | Irrelevant (see analysis, *infra*) |
| Pactiv 4622-23 | 6/20/01 | (1) Pactiv identified weight of Multisorb packets as being the reason for high variance in oxygen reduction in performance tests [Dkt. No. 281, p. 7]. | (1) General replies Multisorb products had been used with meat prior to Pactiv interaction. |

- 2 -

| Bates Number | Date Pactiv Disclosed to Multisorb | Confidential information contained therein (Pactiv's contentions) | Reason the information is not confidential (Multisorb's contentions) |
|---|---|---|---|
| | | (2) Test results informed Multisorb on how Multisorb's formulations performed in reducing oxygen [*Id.*] | (2) "Gill article" of 1994 demonstrated how Multisorb's formulations performed in reducing oxygen in raw meat packages and also demonstrated techniques of testing oxygen scavengers in raw meat packages. The article also dealt with the effect of oxygen on meat color. |
| Pactiv 13538-42 | 6/22/01 | (3) Provided performance data on Multisorb formulations, including "dry acid" packets "show[ing] that Pactiv carried Multisorb's development past [vinegar and water] injecting and provided key insight toward a manufacturable dry acid sachet." | See above |
| M 30277-81 | 6/20/00 | None specified | See above |
| M 29905-11 | 8/1/00 | (4) "Indicated the effect of weight variations" in the packets on oxygen absorbing capability. [Dkt. No. 281, 7]<br><br>(5) Provided the standard procedures for proper performance testing of oxygen absorbers for raw red meat. [*Id.*] | See above |
| M 29912-19 | 8/1/00 | | |
| M 29920-32 | 8/1/00 | | |
| M 29933-37 | 8/1/00 | (6) Informed Multisorb as to protocol of testing oxygen absorbers in regards to raw red meat, effects of oxygen on meat color. [Dkt. No. 281, 7-8]<br><br>(7) Informed Multisorb as to performance of Multisorb's formulations in regards to various types of packaging. [*Id.*] | See above |

## II. **LEGAL STANDARD**

Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party reveals no genuine issues as to any material fact. *Chi. Mercantile Exch., Inc. v. Tech. Research Group, LLC*, 782 F.Supp.2d 674, 679-680 (N.D.

Ill. 2011). When determining whether there is an issue of material fact, courts must view the evidence in the light most favorable to the party opposing the motion, with doubts resolved in favor of the non-movant. *Id.* "Permissible inference must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Sylvia Dev. Corp.*, 48 F.3d 810, 818 (4th Cir. 1995).

### III. <u>ANALYSIS</u>

As discussed in the Court's October 13, 2011, the universe of *potential* confidential information that Multisorb could have used to breach the contract is contained only in documents stamped "confidential."

Multisorb moved for summary judgment on the premise that it had not received any documents stamped "confidential" and so could not have received any confidential information, and thus could not have used that confidential information in development of its products. This was sound logic, but suffered from the minor flaw of not being true. In fact, Pactiv and Multisorb produced 43 pages of documents that were stamped confidential and had been disclosed by Pactiv to Multisorb.

Multisorb then shifted logical ground, noting that Pactiv does not dispute that it never provided Multisorb with any confidential *composition* information about oxygen scavengers. It also produced

- 4 -

testimony from its officer that none of the information in the "confidential" documents had been used to develop Multisorb's products. Dkt. No. 284, Ex. A, 66. Unrefuted, this would be enough to grant summary judgment for Multisorb.

But Pactiv has responded with an inference, arrived at through circumstantial evidence, that the confidential documents contain information that Multisorb used to develop its products.

In light of this inference, Multisorb seeks to limit the universe of confidential information further, noting that the agreement provides a three-year limit on the confidentiality of disclosed information, and treats as non-confidential any already public information or information that Pactiv already knew. Any disclosures three years old, then, could not violate the agreement, even if they were used in the development of Multisorb's products, Multisorb argues.

The earliest date Pactiv has put into evidence is a date of 2003, which a Multisorb executive, Thomas H. Powers ("Powers"), identified as the date Multisorb tested FreshPax CR oxygen absorber. Pactiv reasons that Multisorb must have developed FreshPax CR earlier, and invites the Court to extrapolate to a much earlier dates for purposes of the three-year cutoff. While there is some logic in this invitation (as will be seen shortly), the Court declines to accept, particularly since it gave Pactiv extra

time to question Multisorb employees, and more specific questions about development dates could have been asked.

The 2003 date means documents Bates-stamped Pactiv 127, 149-150 (all disclosed in 1998) cannot contain confidential information because they were disclosed more than three years prior to 2003.

This raises the question of what date in 2003 should serve as the cut off, and it is a question of some import since putting the date at December 31, 2003 would exclude from consideration all the documents that were disclosed August 1, 2000. Making the date January 1, 2003 would include them, however. The Court looks to Powers' testimony for guidance:

> Q.: And when did those tests occur?
> A.: Mostly 2003 to the present.

While not crystal clear, the word "mostly" implies that there was some testing outside of the time frame of 2003 to the present, which would necessarily have to have been *earlier* than 2003. As the Court said, there was logic in Pactiv's invitation to extrapolate, but the Court cannot extrapolate beyond what has been proven, since summary judgment rulings must be based on the evidence before the Court. The only deduction that can be conclusively made is that "mostly" implies at least one test date prior to 2003, which logically can be as late as December 31, 2002 and still be prior to 2003. That lets the August 1, 2000 documents into consideration.

Multisorb then tries to knock out other documents by showing that it knew of their contents, or that the contents were public, prior to disclosure. For instance, a 1994 article (the "Gill article") addressed much of the same information in the documents: methods of testing oxygen scavengers in raw meat packages, test data on how Multisorb's scavengers performed in raw meat packages, test data on how scavengers affect meat color, and various testing protocols for scavenger testing. The Court agrees that this public article removes from the realm of confidential Pactiv's "confidential" items numbered 2, 5, 6 and 7 in the chart above. Further, item No. 3 is removed, because that document merely reveals test data involving dry scavengers; it does discuss how or why dry is preferable to injection scavengers. That information came in other documents or oral conversations that the Court has already ruled were not confidential.

Left are items 1, 4 and 7, dealing with two topics: how weights of packets affect oxygen absorption and how different types of packages affect oxygen absorption.

Here is where Pativ's inference comes in. Powers admitted that Multisorb did not have in its records acceptable performance values for use with raw red meat. Dkt. No. 281, Ex. 1, 155:20-24 to 156:1-5.

Former Pactiv President Christopher Nigon ("Nigon") testified that prior to collaborating with Pactiv, Multisorb had never

developed products for *uncooked* meat. "This stuff was way beyond what we had ever experienced before," Nigon said. Dkt. 281, Ex. 3, 62:21-23. He elaborated that there were several different considerations when it came to such a product, and that entering that market was "scary" because of the potential for food poisoning. *Id.* at 62.

In sum, Pactiv has produced evidence that, prior to the parties' collaboration, Multisorb never made products for red raw meat, but within three years of the disclosure of the information regarding how weights of packets and types of packages affect oxygen absorption rates, Multisorb was testing its own FreshPax CR, which is used with red, raw meat. That Pactiv contends, leads to a reasonable inference that Multisorb used this confidential information to enter the raw-meat market. This is mere supposition. There is no direct evidence that Multisorb used this information in the development of its FreshPax CR. Nor is there any particularly strong *indirect* evidence that Multisorb used it – for example, evidence suggesting that FreshPax CR or the Maplox Program is dependent upon weight variances or particular types of packaging.

For a jury to reach a verdict that Multisorb misused this information, it would have to infer that because Multisorb uses packages and its scavengers have weights, its particular packages and particular weights were instrumental to its development. It

would also have to infer that because Multisorb had this information in its possession, it necessarily used it. When a jury must pile inference upon inference to reach a verdict, and less than a scintilla of evidence recommends the inferred course of events, summary judgment is proper. *Oil, Chem. & Atomic Workers Int'l Union Local No. 7-765, et al. v. Stauffer Chem. Co.,* No. 91-1265, 1992 U.S.App. LEXIS 14092, at *10 (7th Cir. 1992); *see also Anderson v. Nat. R.R. Passenger Corp.*, No. 03-C-7589, 2006 U.S. Dist. LEXIS 21647, at *33 (7th Cir. 1992).

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

**DATE:** 3/27/2012