**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **PACTIV CORPORATION,** | |
| Plaintiff, | Case No. 10 C 461 |
| v. | Hon. Harry D. Leinenweber |
| **MULTISORB TECHNOLOGIES, INC.,** | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Reconsider the December 14, 2011 Order directing it to turn over all documents on its privilege log. For the following reasons, the motion is granted.

## I. BACKGROUND

This case is the consolidation of two patent infringement cases regarding oxygen absorbers or "scavengers" which are placed in packages holding raw red meat to remove oxygen and keep the meat fresh longer. At issue are seven of Plaintiff's patents and two of Defendant's patents. Plaintiff's infringement claims are stayed while its patents are re-examined. The Plaintiff's contract claim and Defendant's counterclaims continue. The Court granted Defendant summary judgment on the breach of contract claim.

While discovery in nearly all patent litigation is contentious, the two parties in this case have been exceptionally cantankerous. Plaintiff Pactiv has repeatedly accused Defendant Multisorb of stalling and delay tactics; Defendant has repeatedly accused Plaintiff of using this litigation to discover its trade secret scavenger formulas. The Court counts at least fifteen (15) Motions for Protective Orders or to Compel. The Motion at issue here is Multisorb's Motion to Compel production by Pactiv of documents listed on its privilege log. [ECF No. 248]. The Court heard this Motion, as well as a Cross-Motion by Pactiv to compel production of final infringement contentions and to compel deposition of a witness. The Court granted all of the motions.

Pactiv filed a Motion to Reconsider the motion to compel production of documents on its privilege log.

## II. **LEGAL STANDARD**

A motion to reconsider is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. *Caisse Nationale De Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Rather, reconsideration is appropriate only after a manifest error of law or apprehension of fact by the Court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191.

### III. <u>ANALYSIS</u>

#### A. The Motion to Reconsider

The Court finds there was a misapprehension of fact in the rendering of its December 15, 2011 oral ruling given after a hearing on the motion. Although it was mentioned during the hearing, lost in the din of the squabbling parties was the fact that the parties did not meet and confer before the motion to compel was filed. *See* Hr'g Tr.; ECF No. 262, PageID 5497; *see also* FED. R. CIV. P. 37(a)(1).

Multisorb avers that it had several meet-and-confers over this issue, but it appears uncontested that, after Pactiv's most recent submission to Multisorb of its revised privilege list, there was no meet-and-confer over the insufficiency of that privilege list. *See* Decl. of Jennifer Friedman, ECF No. 250, 2-3 (documenting a last meet-and-confer of September 27, 2011, *prior to* Pactiv's submission to Multisorb of a revised privilege list on October 29, 2011). Multisorb contends another meet-and-confer was not necessary in light of prior meetings over the privilege list. That argument is not without logic. But the Court also notes there is some merit to Pactiv's argument that Multisorb may have been motivated to file the motion prematurely to muddy the waters on Pactiv's motions to compel deposition and production of overdue infringement contentions.

In any event, the meet-and-confer was not held, and the motion to reconsider is granted.

### B. Privilege Log Contents

That does not end the inquiry, however. The parties raised other issues regarding deviation from the Rules of Civil Procedure and privilege of requested documents. First considered is the sufficiency of Pactiv's privilege log.

Federal Rule of Civil Procedure 26(b)(5)(A)(I) requires a party withholding documents under a claim of privilege to describe the nature of the documents in a way "that will enable other parties to assess the claim" of privilege. The Court has examined Pactiv's log and agrees with Multisorb that it is lacking in specificity. Dozens, if not hundreds of items on the log do not indicate who wrote or received the documents. Some entries (*e.g.*, Item No. 85 on the October 29, 2011 privilege list) contain no description of their content whatsoever.

Additionally, Pactiv, after reading Multisorb's motion to compel, apparently agreed it had meritlessly withheld documents and released hundreds of documents on the list. This indicates that Pactiv has not thoroughly considered, on a document-by-document basis, whether privilege was actually warranted. Also, Multisorb contends that Pactiv's counsel, in a meet-and-confer, erroneously identified attorneys listed on the log as Pactiv's counsel when, in fact, they were counsel for other entities.

- 4 -

For all the above reasons, Pactiv is ordered to re-examine every document for which it claims privilege and redetermine if, in fact, there are legitimate issues of privilege. Moreover, because Pactiv has had five tries at its privilege log and has not yet gotten it right, it is ordered to revise its privilege log to include, for each and every document, the following:

- the name of the author of the document;

- the name of the recipient of the document;

- a description of who those parties are (*e.g.*, Pactiv employees, Desiccare employees, Pactiv in-house counsel, Pactiv outside counsel, etc.) Counsel should also list specific titles with names to allow Multisorb to attempt to assess whether disclosure to that employee waived privilege because the employee did not have a need to access the privileged document. *See Muro v. Target Corp.*, 04-6267, 2006 U.S. Dist. LEXIS 86030, at *11-12 (indicating that the sharing of privileged documents with employees who do not need the information waives the privilege);

- more thorough descriptions of each document that give an indication of why privilege applies. For example, if the claim of privilege on a document that was not written to or from an attorney is that it is relaying legal advice, that should be explicitly noted.

*See also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, No. 91-6103, 145 F.R.D. 84, 88, 1992 U.S. Dist. LEXIS 17498, at *9-10 (N.D. Ill. Nov. 13, 1992) (indicating skeletal privilege logs with cut-and-paste descriptions of documents and cut-and-paste explanations of why documents are immune from discovery are insufficient to meet the burden of showing privilege). Failure to

list the above information on the privilege log will result in a finding that Pactiv has not met its burden.

Pactiv is additionally ordered to include on the log documents that Multisorb contended in its December 2, 2011 motion to compel are discoverable but are not on the current privilege log (unless, of course, Pactiv reconsiders and decides the documents are not privileged and produces them). ECF No. 249.

Multisorb also contends Pactiv is knowingly including documents on the log it knows are not privileged. While the Court was not persuaded by all of Multisorb's arguments in its December 2, 2011 motion, Multisorb makes a strong case that Pactiv has been unreasonably, or incompetently, withholding documents that are not privileged.

For instance, Pactiv withheld documents that Multisorb *was already a party to and had already received.* *See* Def.'s Mot., 5; ECF No. 249 (demonstrating that Documents No. 1373 and 1374 on the privilege log were contracts entered into by both Multisorb and Pactiv). It is possible that Pactiv withheld these documents over a "contract review sheet" that is part of the document. Perhaps this is an internal document with legal observations by Pactiv's attorneys that was not supplied to Multisorb. Perhaps not. But what Pactiv has apparently failed to remember is that the burden of showing privilege lies with the withholder. Cryptic notations in a privilege log leave its opponent and this Court to guess at why

it might be privileged. That does not sustain its burden. If Pactiv wants to withhold 1485 documents, it not only must have a good reason for doing so, but like a high school algebra student, it must show its work and demonstrate in the privilege log why it may do so.

Multisorb also makes a strong argument that attorney-client privilege on multiple documents was waived by virtue of legal advice that was circulated to employees who did not need to know it (*see Muro*, 2006 U.S. Dist. LEXIS 86030, at *6-7) and that attorney-client privilege never attached to many other documents because an attorney was merely "cc'd," solely for the purpose of trying to make it appear as if attorney-client privilege should attach, when, in fact, the communication was neither a request for, nor communication of, legal advice. *See id.* at * 8.

The Court is hopeful that Pactiv's re-examination and new privilege log will settle this discovery dispute. If it does not, however, and an *in camera* inspection is necessary to verify Pactiv's claims of privilege (either by the Court or a Special Master), Pactiv is put on notice that the frivolous inclusion on the privilege log of clearly unprivileged documents will result in sanctions that may include fines and the ordered turnover of the entirety of documents on privilege log.

Counsel for Pactiv has three (3) weeks from entry of this order to produce a revised log or, alternatively, turn over documents for which it no longer claims privilege.

### C.  Common Interest Privilege

Also at issue in the motion to compel were claims of applicablility of the "Common Interest" doctrine to documents shared between Desiccare and Pactiv. Desiccare is Pactiv's supplier. In approximately May 2008, Pactiv and Desiccare began discussions to enter into an agreement whereby Desiccare would supply oxygen absorbers to Pactiv, which in turn would sell to its customers. Pactiv claims that, at that time, both parties were cognizant of issues of potential infringement upon Multisorb's patents, and they accordingly sought to avoid doing so. "[B]oth companies . . . had a shared common interest in ensuring that any product they developed and manufactured did not infringe any third-party patents." Dec. of Kelly M. Furstoss, 2; ECF No. 265, 2.

Among the shared documents is an infringement opinion Desiccare obtained from outside counsel and then shared with Pactiv and part-time Desiccare employee John Brennan, who also owned his own company at the time. "Mr. Brennan was hired specifically to head up the joint project between Desiccare and Pactiv." Decl. of Marcus Dukes, 2; ECF No. 267, 2. Pactiv and Desiccare contend that Mr. Brennan was a necessary party to such disclosure. Multisorb counters that Brennan had no technical expertise, but instead was

Desiccare's commercial expert, involved in marketing activities, and attach deposition testimony backing up this claim.

Multisorb objects to the applicability of the common interest doctrine. It notes that a formal, written joint defense agreement (a/k/a, common-interest agreement) was not signed until January 20, 2011, and much of the withheld documentation sought far precedes that. The outside-counsel infringement opinion Desiccare procured, for example, came nearly two years earlier. Pactiv responds that a common-interest agreement need not be in writing, nor must litigation be pending, to provide protection from disclosure.

### *1. Common-Interest Legal Standard*

"Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). It applies only where the parties undertake a joint effort with respect to a common *legal* interest and is limited to those communications made to further an ongoing enterprise. *Id*. at 815-816. Communications need not be made in anticipation of litigation. *Id*. Nor must there be a written agreement to pursue a common legal interest. *Pac. Pictures Corp. v. United States Dist. Court*, 11-71844, 2012 U.S. App. LEXIS 7643, at *17-18 (9th Cir. 2012).

"Under the privilege, any member of a client set – a client, the client's agent for communication, the client's lawyer, and the lawyer's agent . . . can exchange communications with members of a similar client set. However, a communication directly among the clients is not privileged unless made for the purpose of communicating with a privileged person as defined in § 70." *Restatement of the Law, Third, The Law Governing Lawyers,* § 76, Comment d (American Law Institute, 2000). "The exchanged communication must itself be privileged. The doctrine does not create new kinds of privileged communications aside from client-lawyer and similar types of communications. . . ." *Id.*, Reporter's Note, Comment d.

### 2. *Common Interest Analysis and Conclusion*

Therefore, in the abstract, Pactiv's claim that the common interest doctrine may provide protection for the disputed documents is correct, despite lack of a written document and no anticipation of litigation. But as the *Restatement* notes, the underlying document itself must be privileged. Multisorb has made a convincing argument that supplying the infringement opinion to Brennan was unnecessary disclosure and waived privilege. Before claiming privilege on this document, Pactiv should address this argument, either on the privilege log or in a memo to the Court. Again, meritless claims of privilege risk sanctions.

**D. Settlement Discussion Privilege**

Among the withheld documents are those that Pactiv contends are protected from discovery by settlement negotiation privilege derived from Federal Rule of Evidence 408. Multisorb points to a footnote in a 1979 Seventh Circuit case that finds no such *discovery* privilege, only a privilege from admissibility. *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n. 20. Pactiv points to four District cases from the Northern District of Illinois to conclude otherwise. *Pfizer Inc. v. Apotex, Inc.*, 731 F.Supp.2d 754, 763 (2010); *Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 652 (1994); *Steele v. Lincoln Fin. Group*, No. 05-7163, 2007 U.S. Dist. LEXIS 25587, at *4 (April 3, 2007); *Clark v. Experian Info. Solutions Inc.*, No. 03-7882, 2006 U.S. Dist. LEXIS 13808(Jan. 6, 2006).

The Court notes that these District Court cases are not binding on this Court. Moreover, while the footnote in *In re General Motors* is hardly an authoritative announcement of the Seventh Circuit's position on this issue, it is all that has been cited by the parties or found by the Court to hint at the appellate court's inclination on this subject. Simply put, the Seventh Circuit trumps the District Courts.

Additionally, the Court finds more persuasive than the local cases the cases of *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, 2007 U.S. Dist LEXIS 27437 (N.D. Cal. March 30, 2007) and its cited

case, *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F.Supp.2d 201 (D. D.C. 2005). The Court will not duplicate the exhaustive examination of the issues in those cases. But it does note well *Matsushita*'s reminder that new federal privileges are not to be created by the courts lightly. Liberal discovery is the general rule. More and more exceptions to this general rule threaten to swallow it. This case, in particular, illustrates the danger of creating new privileges. Both parties here have repeatedly engaged in disingenuous invocation of privileges and exceptions in a show of blatant gamesmanship, abusing the rules of discovery in either an attempt to create delay or to avoid surrendering evidence they know full well should be turned over. They don't need yet another tool by which to abuse the system.

The Court finds no discovery privilege exists regarding settlement negotiations. Admissibility, of course, is an entirely different matter. But if Pactiv continues to withhold these documents, it must do so on a basis other than settlement "privilege."

## IV. CONCLUSION

Pactiv is ordered to re-examine all documents on its privilege log and reassess them for claims of privilege. It is also ordered to modify its privilege log in accordance with the instructions contained in this Order. Pactiv has three (3) weeks from entry of this order to turn over to Multisorb its revised privilege log and

any documents it no longer claims as privileged. Pactiv is reminded that failure to adequately justify claims of privilege will result in a finding that its burden has not been met. The Court is willing to engage in *in camera* review (either directly or through a Special Master) for any documents that still remain at issue after Pactiv's re-examination and after Multisorb follows appropriate meet-and-confer procedures. However, if that *in camera* review finds Pactiv is engaging in frivolous claims of privilege, it faces sanctions, including fines and/or the ordered turnover of all documents contained on its privilege log.

The Court further finds that the disputed common-interest doctrine may apply to the documents at issue in this case, provided the underlying documents are, in fact, privileged. However, the Court does not recognize any "settlement" discovery privilege linked to Rule 408.

Finally, the Court notes that because this ruling concerns Pactiv's withholding of documents, it has focused on its abuses, but Multisorb has been no purer. For example, early in this case the Court ruled that Multisorb's initial disclosures (a two-page marketing brochure and short promotional video) under Local Patent Rule 2.1(b)(1) were insufficient to allow Pactiv to assess potential infringement. The Court also ruled at that time that, by its own submissions, Multisorb had clearly demonstrated it had in its possession or control other information that would have more

clearly allowed Pactiv to assess infringement but failed to turn it over.  The Court ordered production of that information.  Tr. of Nov. 18, 2010 proceedings, ECF No. 95, 10.  This half-compliance with the Local Rules was bad enough, but later, when the second patent case was consolidated, Multisorb delivered the exact same inadequate disclosures in regards to the new patents at issue.  Tr. of May 5, 2011 proceedings, ECF No. 203, 4-5.)

Both parties are advised that the Court's patience is growing thin with these abuses of discovery and general gamesmanship.  Accordingly, both parties are put on notice that further similar behavior may result in sanctions designed to cure such behavior.
**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

**DATE:** 5/18/2012